**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Gordon Casey, as an individual and as a representative of the classes,<br><br>                            Plaintiff,<br><br>    v.<br><br>Citibank, N.A., CitiMortgage, Inc., MidFirst Bank, N.A. d/b/a Midland Mortgage, and FirstInsure, Inc.,<br><br>                          Defendants. | **CLASS ACTION COMPLAINT**<br><br>Civil Case No.: 5:12-CV-820 (DNH/DEP)<br>Jury Trial Demanded |

Plaintiff Gordon Casey ("Plaintiff"), by and through his attorneys, Nichols Kaster, PLLP, and on behalf of himself, the Putative Classes set forth below, and in the public interest, brings the following Complaint against Defendants Citibank, N.A. ("Citibank"), CitiMortgage, Inc. ("CitiMortgage"),[1] MidFirst Bank, N.A. d/b/a Midland Mortgage ("Midland"), and FirstInsure, Inc. ("FirstInsure") (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.    Plaintiff and the Putative Class members have mortgages[2] secured by residential property, and were required to purchase flood insurance by Citigroup and/or Midland.

2.    Defendants have systematically violated the legal rights of Plaintiff and other Putative Class members in two fundamental respects, as set forth below

---

[1] Citibank and CitiMortgage are collectively referred to herein as "Citigroup."
[2] The term "mortgage" as used herein also refers to deeds of trust and other types of security instruments.

3.      First, Citigroup and Midland unfairly, unjustly, and unlawfully forced Plaintiff and other Putative Class members to purchase and maintain flood insurance in amounts greater than required by law, greater than required by their mortgage agreements, and greater than Defendants' financial interest in their property.

4.      Second, Defendants unfairly, unjustly, and unlawfully profited from force-placing insurance on Plaintiff's property and the property of other Putative Class members, by charging Plaintiff and other class members amounts in excess of the net costs incurred by Defendants for such insurance and by arranging for kickbacks, commissions, or other compensation for Defendants and/or their affiliates in connection with force-placed (also known as lender-placed) insurance.

5.      Defendants engaged in this conduct in bad faith, knowing that their actions were contrary to applicable law, reasonable commercial standards of fair dealing, and the reasonable expectations of borrowers upon entering into their mortgage agreements.

6.      Based on Defendants' conduct as described herein, Plaintiff asserts claims for:

a)   breach of contract/breach of the covenant of good faith and fair dealing (against Citigroup and Midland);

b)   unjust enrichment (against all Defendants);

c)   breach of fiduciary duty/breach of trust (against Citigroup and Midland);

d)    violation of the New York Deceptive Practices Act ("NYDPA")    (against Citigroup and Midland); and

e)    violation of the Truth-in Lending Act ("TILA") (against Midland).

7.      Plaintiff asserts these claims on behalf of two proposed classes and two proposed sub-classes (the "Putative Classes") of Citigroup and Midland mortgagors, as set forth below in Paragraphs 47-54.

8.      Plaintiff and the Putative Classes seek injunctive relief, corresponding declaratory relief, monetary relief, and other appropriate relief for Defendants' unlawful conduct, as described herein.

## THE PARTIES

9.      Individual and representative Plaintiff Gordon Casey resides in Syracuse, New York.  Plaintiff is a member of each of the Putative Classes as defined herein.[3]

10.      Defendant Citibank is one of the nation's largest banks, and is headquartered in New York City.  Citibank is engaged in the business of mortgage lending in all 50 states, including New York.

11.      Defendant CitiMortgage is an affiliate of Citibank, N.A..  CitiMortgage is headquartered in O'Fallon, Missouri, and services mortgages on behalf of CitiBank, N.A. in New York and throughout the country.  At all relevant times, CitiMortgage's conduct was approved, authorized, and/or ratified by Citibank and CitiMortgage was acting as Citibank's agent.

12.      Defendant Midland is headquartered in Oklahoma City, and is engaged in the business of mortgage lending and servicing in all 50 states, including New York.

13.      Defendant FirstInsure is an affiliate of Midland, and also is headquartered in Oklahoma City.  FirstInsure is registered with the Oklahoma Secretary of State as a domestic for profit insurance corporation.  FirstInsure does business in the State of New York, and receives

---

[3] Plaintiff reserves the right to amend his proposed class definitions or to propose other classes (or subclasses) in his class certification motion, after having an opportunity for discovery.

commissions in connection with lender-placed flood insurance policies covering the property of Midland mortgagors in New York and other states.

**JURISDICTION AND VENUE**

14.     This Court has federal question jurisdiction over Plaintiff's TILA claim pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court also has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of the State of New York, and three of the Defendants are citizens of different states.  The amount in controversy in this action exceeds $5,000,000.00, and there are more than 100 members of the Putative Classes.

16.     Venue is proper in the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this district, Defendants regularly transact business in this district, and a substantial part of the events giving rise to Plaintiff's claims arose in this District.

**FACTUAL ALLEGATIONS**

*History of Plaintiff's Mortgage Loan*

17.     On or about Ju1y 16, 2002, Plaintiff obtained a loan from HCI Mortgage ("HCI") for approximately $25,000, which was secured by a mortgage on his home.  *See Exhibit 1.*

18.     Citibank acquired Plaintiff's mortgage loan from HCI shortly thereafter. From 2002 until sometime in the second half of 2011, Citibank was the lender-in-interest to Plaintiff's mortgage, and during this time, CitiMortgage serviced Plaintiff's mortgage loan on behalf of Citibank.

4

19.     In the second half of 2011, Citibank transferred its interest in Plaintiff's mortgage to Midland, and since that time, Midland has been the lender-in-interest to the mortgage and has serviced Plaintiff's mortgage loan.

20.     The current principal balance of Plaintiff's mortgage loan is less than $17,000.

***Flood Insurance Requirements for Plaintiff's Property***

21.     Because Plaintiff's home falls within a Special Flood Hazard Area ("SFHA"), Plaintiff's mortgage loan is subject to the requirements of the National Flood Insurance Act ("NFIA").

22.     The NFIA requires lenders to ensure that any improved property in a SFHA that secures a loan or line of credit is covered by flood insurance.  Under the NFIA, this insurance must be maintained "in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act, ***whichever is less***."  42 U.S.C. § 4012a(b)(1) (emphasis added).

23.     Plaintiff's mortgage does not require him to maintain flood insurance on his home in excess of the minimum amount required by federal law (i.e., in excess of his principal balance).  Paragraph 4 of Plaintiff's mortgage states that Plaintiff is obligated to "insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary" of Housing and Urban Development ("HUD").[4] HUD's website, in turn, provides as follows:

---

[4] This is the only provision of the mortgage that deals with flood insurance.  Although Paragraph 4 of the mortgage contains a separate provision relating to the amount of hazard insurance that is required as a condition of the loan, flood insurance is different from hazard insurance.  For this reason, many of the documents that Plaintiff signed upon origination of his mortgage loan – including his HUD-1 Settlement Statement, Federal Truth-In-Lending Disclosure Statement, and Initial Escrow Account Disclosure Statement – refer separately to flood insurance and  hazard insurance.  *See Exhibits 2-4.*

**Dollar Amount of Flood Insurance Coverage.** For loans, loan insurance or guarantees, the amount of flood insurance coverage need not exceed the outstanding principal balance of the loan.

http://www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm (last visited Oct. 31, 2011); *accord*, 24 C.F.R. § 203.16a(c) ("flood insurance must be maintained . . . in an amount at least equal to . . . the outstanding balance of the mortgage").[5]

24.     Plaintiff's mortgage also does not state that the lender's insurance requirements can change. In this regard, Plaintiff's mortgage differs from the current Fannie Mae/Freddie Mac Single Family Uniform Instrument for New York, which states as follows in the section of the document pertaining to insurance: "What Lender requires pursuant to the preceding sentences can change during the term of the Loan." *See Exhibit 5, ¶ 5.*

***Citigroup Force-Places Excessive Coverage and Receives a Kickback***

25.     Pursuant to federal law and the terms of his mortgage, Plaintiff obtained $25,000 worth of flood insurance coverage upon originating his mortgage loan. *See Exhibit 6.* This amount of coverage was deemed adequate by HCI as the original lender-in-interest, and also was deemed adequate by Citibank and CitiMortgage at the time Citibank acquired Plaintiff's mortgage loan.

26.     For years, Plaintiff continued to maintain flood insurance on his home in an amount sufficient to cover his outstanding principal balance, and even increased his flood insurance coverage slightly over time. Prior to 2010, Citigroup never contended that his coverage was inadequate.

27.     For the period from July 13, 2009 – July 13, 2010, Plaintiff maintained $30,300 worth of flood insurance coverage on his home. *See Exhibit 7.* This amount of coverage was more than sufficient to cover his outstanding principal balance at that time. However, on June 23,

---

[5] HUD's flood insurance requirements have not changed during the relevant time period.

2010, CitiMortgage sent Plaintiff a form letter on behalf of Citibank ("First CitiMortgage Letter"), suddenly claiming that his flood insurance coverage was "deficient". *See Exhibit 8.*

28.     According to the First CitiMortgage Letter, Plaintiff was required to carry flood insurance coverage at least equal to the ***greater of*** 80% of the replacement cost value of his property or the unpaid principal balance of all liens on his property, up to $250,000.  This so-called requirement is not specified anywhere in Plaintiff's mortgage or other loan documents.

29.     Based on this so-called requirement, CitiMortgage contended that Plaintiff was required to increase his flood insurance coverage by $107,780.[6]  The First CitiMortgage Letter further stated that if Plaintiff did not increase his flood insurance coverage by this amount, CitiMortgage would purchase a flood insurance policy for him and charge the premiums to his escrow account.

30.     On August 7, 2010, CitiMortgage sent Plaintiff a second form letter on behalf of Citibank ("Second CitiMortgage Letter"), claiming that "your current flood policy is less than the amount of flood insurance required." *See Exhibit 9.*  The Second CitiMortgage Letter further indicated that CitiMortgage had obtained a flood insurance binder for Plaintiff's property in the amount of the alleged deficiency.

31.     On August 20, 2010, CitiMortgage sent Plaintiff a third form letter on behalf of Citibank ("Third CitiMortgage Letter"), informing Plaintiff that CitiMortgage had purchased a one-year flood insurance policy for his property from American Security Insurance Company ("ASIC").  *See Exhibit 10.*  This force-placed policy provided an additional $107,780 in flood insurance coverage for Plaintiff's property at a premium cost of $970, which was paid out of

---

[6] CitiMortgage contended that this amount was the "difference between the amount of [Plaintiff's] existing flood insurance and the minimum acceptable coverage amount." *Id.* However, as noted above, Plaintiff's existing coverage amount already exceeded the level of coverage specified by the NFIA, HUD, and the terms of his mortgage.

Plaintiff's escrow account.  This was purely excess coverage,[7] and was totally unnecessary to protect Citigroup's financial interests because its financial stake in Plaintiff's property already was fully protected by Plaintiff's existing flood insurance policy, which listed CitiMortgage as an insured mortgagee.  CitiMortgage unilaterally purchased this excess coverage without Plaintiff's consent, and Plaintiff did not want this coverage.

32.     Citigroup and/or its affiliates received a kickback or commission from ASIC on this lender-placed coverage.  Although this commission arrangement was kept secret from Plaintiff and was not disclosed in any of the form letters that were sent to him, the commissions paid by ASIC to lenders and/or their affiliates on force-placed insurance coverage (both flood insurance and hazard insurance) are the subject of numerous reported cases.  *See, e.g., McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, No. C-11-03058 JCS, 2012 WL 1029502, at *23 (N.D. Cal. Mar. 26, 2012); *Hofstetter v. Chase Home Fin. LLC,* No. 10-1313, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011); *Gipson v. Fleet Mortgage Group*, 232 F. Supp. 2d 691, 705-06 (S.D. Miss. 2002).  Moreover, the commission arrangements between major banks and insurance firms -- including ASIC's parent company, Assurant -- have been reported in *American Banker* magazine (*see Exhibit 11*), and are the subject of a pending investigation by the New York Department of Financial Services, which has "uncovered evidence of potentially problematic and abusive practices in the industry occurring at the expense of homeowners[.]"  *See* http://www.dfs.ny.gov/about/press/pr1204261.htm.  "Early findings of the investigation suggest that 15 percent or more of premiums collected by force-placed insurers flow to the banks through insurance agents affiliated with the banks."  *See* www.dfs.ny.gov/about/press/pr1204051.htm.

---

[7] The Third CitiMortgage letter explicitly stated that "coverage under this policy will only apply if a loss exceeds the amount of coverage provided by your existing insurance policy."

33.     Citigroup's lender-placed insurance coverage was not nearly so lucrative for Plaintiff.  He has never filed a claim on the lender-placed policy (or any other flood insurance policy), and his mortgage payments increased significantly after the force-placed premium was built into his monthly payment amount.   This imposed a significant financial burden on Plaintiff.[8]  However, Plaintiff made the increased payments in full, in order to avoid damaging his credit or jeopardizing his ability to remain in his home.

34.     In July of 2011, Plaintiff increased his coverage level to $188,300, to satisfy Citigroup's flood insurance requirements and avoid being charged for another force-placed policy.[9]  *See Exhibit 12*.   At that point, CitiMortgage cancelled his force-placed coverage effective July 13, 2011, but refused to refund any charges for force-placed coverage prior to that date.

***Midland Mortgage Force-Places <u>More</u> Excessive Coverage and Receives Its Own Kickback***

35.     Shortly thereafter, Citibank transferred Plaintiff's mortgage to Midland, which demanded even *more* flood insurance coverage for Plaintiff's property.

36.     On December 23, 2011, Midland sent Plaintiff a Notice of Insufficient Flood Insurance Coverage ("First Midland Letter"), claiming that "[a] review of your flood insurance coverage indicates that your property is not adequately insured in the event of a loss."  *See Exhibit 13*.

37.     In this letter, Midland acknowledged that Plaintiff was not obligated "[b]y law" to maintain flood insurance in excess of his outstanding principal balance, but stated that Midland requires "100-percent Replacement Cost Value" coverage, up to the National Flood Insurance

---

[8] Plaintiff is a disabled former factory worker, and lives with his wife on a fixed monthly disability check.

[9] But for Citigroup's excessive insurance demands, Plaintiff would not have obtained this additional coverage and would not have incurred the cost of this additional coverage.

Program maximum of $250,000.  Based on this requirement, which is not set forth in Plaintiff's mortgage or other loan documents, Midland determined that "the minimum required flood coverage for [Plaintiff's] property should be $237,349."

38.    This coverage amount was approximately *fourteen times* Plaintiff's outstanding principal balance, and never previously was required as a condition of his loan.  Nevertheless, Midland stated that it would purchase additional flood insurance coverage for Plaintiff's property if he did not meet this new requirement.

39.    On January 23, 2012, Midland sent Plaintiff a Second Notice of Insufficient Flood Insurance Coverage ("Second Midland Letter").  *See Exhibit 14.*  In this letter, Midland claimed that "[t]here is a problem with the FLOOD insurance on your home[,]" and demanded that Plaintiff increase his coverage amount to $237,349 within 15 days.

40.    On February 9, 2011, Midland sent Plaintiff a Notice of Purchase of Lender Placed Flood Policy Due to Insufficient Coverage Amount ("Third Midland Letter").  *See Exhibit 15.*  In this form letter, Midland announced that it had purchased $49,049 in additional flood insurance coverage for Plaintiff's property -- beyond Plaintiff's existing coverage level of $188,300 -- but also curiously stated that "the minimum flood coverage for your property should be $0."

41.    The cost of this force-placed flood insurance coverage ($154.12) was charged to Plaintiff's mortgage escrow account, and built into his monthly mortgage payment.  As a result of this force-placed flood insurance coverage and the increased coverage that Plaintiff already had obtained (which also was paid out of his escrow account), he is now paying $1,478.12 per year in flood insurance on his mortgage loan, and his monthly payments have skyrocketed to $757.30 to make up for the resulting escrow "shortage."  *See Exhibit 16.*

42.    This places a crushing financial burden on Plaintiff, and he has barely managed to make the increased monthly payment amount, which became effective this month (May 2012). Unless Midland changes its policy or is ordered to do so, it is likely that Plaintiff will be unable to continue making these increased payments and he may face the loss of his home.

43.    Plaintiff's predicament recently was the subject of a lengthy investigative article in the Syracuse Post-Standard.  *See Exhibit 17.*  In this article, a Midland spokesperson declined to budge from Midland's onerous flood insurance requirement, stating that Midland insists on replacement cost coverage "to ensure that if the property sustained a total loss that our interests would be protected and the property rebuilt."

44.    This explanation is unsatisfactory to Plaintiff and defies common sense. Midland's interest in Plaintiff's property is limited to recovering his outstanding principal balance, and it has no right to demand additional flood insurance coverage in excess of the amount required by the NFIA, HUD, or the terms of his mortgage.

45.    Midland did not force-place additional flood insurance coverage on Plaintiff's property to protect its legitimate financial interests, or out of concern for Plaintiff.  Rather, Midland force-placed this coverage because it was financially lucrative for it to do so.  *See supra* at ¶ 32.   Midland's form letters expressly acknowledge that "[a]n affiliate of Midland, FirstInsure, earns a commission on, and/or derives other income from, premiums from lender placed flood insurance."  Midland also receives commissions on force-placed hazard insurance.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

***Proposed Classes of Citigroup Mortgagors***

47.     Plaintiff asserts his breach of contract/breach of covenant of good faith and fair dealing claim (Count 1) on behalf of a proposed Citigroup Over-Insured Class defined as follows:

> **Proposed Citigroup Over-Insured Class:**  All persons in the United States who were required by Citigroup, during the applicable limitations period, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or 80% of the replacement cost value of their property, as a condition of any residential mortgage loan or line of credit secured by such property, where such coverage was not required upon origination of the mortgage loan or line of credit.

48.     Plaintiff asserts his unjust enrichment claim against Citigroup (Count 2) on behalf of a proposed Citigroup Lender-Placed Class defined as follows:

> **Proposed Citigroup Lender-Placed Class:**  All persons in the United States who were charged for lender-placed insurance by Citigroup during the applicable limitations period.

49.     Plaintiff asserts his breach of fiduciary duty/breach of trust claim against Citigroup (Count 3) on behalf of a proposed Citigroup Escrow Sub-Class defined as follows:

> **Proposed Citigroup Escrow Sub-Class:**  All persons in the Excess Insurance Class or the Lender-Placed Insurance Class whose lender placed insurance premiums were escrowed by Citigroup.

50.     Plaintiff asserts his NYDPA claim against Citigroup (Count 4) on behalf of a proposed Citigroup New York Sub-Class defined as follows:

> **Proposed Citigroup New York Sub-Class:**  All persons in the Citigroup Over-Insured Class or the Citigroup Lender-Placed Class whose mortgage loan or line of credit with Citigroup was secured by real property in the State of New York, and who were subject to Citigroup's flood insurance requirements and/or had lender-placed insurance coverage purchased for their property by Citigroup on or after May 17, 2009.

***Proposed Classes of Midland Mortgagors***

51.     Plaintiff asserts his breach of contract/breach of covenant of good faith and fair dealing claim against Midland (Count 5) and TILA claim against Midland (Count 9) on behalf of a proposed Midland Over-Insured Class defined as follows:

> **Proposed Midland Over-Insured Class:**   All persons in the United States who were required by Midland, during the applicable limitations period, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or 100% of the replacement cost value of their property, as a condition of any residential mortgage loan or line of credit secured by such property, where such coverage was not required upon origination of the mortgage loan or line of credit.

52.     Plaintiff asserts his unjust enrichment claim against Midland and FirstInsure (Count 6) on behalf of a proposed Midland Lender-Placed Class defined as follows:

> **Proposed Midland Lender-Placed Class:**   All persons in the United States who were charged for lender-placed insurance by Midland during the applicable limitations period.

53.     Plaintiff asserts his breach of fiduciary duty/breach of trust claim against Midland (Count 7) on behalf of a proposed Midland Escrow Sub-Class defined as follows:

> **Proposed Midland Escrow Sub-Class:**   All persons in the Excess Insurance Class or the Lender-Placed Insurance Class whose lender placed insurance premiums were escrowed by Midland.

54.     Plaintiff asserts his NYDPA claim against Midland (Count 8) on behalf of a proposed Midland New York Sub-Class defined as follows:

> **Proposed Midland New York Sub-Class:**  All persons in the Midland Over-Insured Class or the Midland Lender-Placed Class whose mortgage loan or line of credit with Midland was secured by real property in the State of New York, and who were subject to Midland's flood insurance requirements and/or had lender-placed insurance coverage purchased for their property by Midland on or after May 17, 2009.

55.  <u>Numerosity</u>:   The Putative Classes are so numerous that joinder of all class members is impracticable.  During the relevant time period, thousands of Defendants' customers satisfy the definition of the Putative Classes.

56.  <u>Typicality</u>:   Plaintiff's claims are typical of the members of the Putative Classes.  Among other things: (1) Plaintiff's mortgage documents are typical of those of other Putative Class members; (2) the form letters that Plaintiff received are typical of those received by the other Putative Class members; (3) Defendants treated Plaintiff consistent with other Putative Class members in accordance with Defendants' uniform policies and practices; (4) it was typical for Defendants to require mortgagors to purchase and maintain flood insurance in amounts greater than required by law, greater than required by their mortgage documents, and greater than required to insure the amount of funds extended to them; and (5) it was typical for Defendants and/or their affiliates to receive kickbacks or commissions in connection with lender-placed insurance.

57.  <u>Adequacy</u>:   Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation, including flood insurance litigation.  *See Hofstetter v. Chase Home Finance, LLC*, No. 10-01313, 2011 WL 1225900 (N.D.Cal. Mar. 31, 2011) (finding counsel of record to be adequate and appointing counsel as class counsel in class action lawsuit asserting similar claims).

58.  <u>Commonality</u>:  Common questions of law and fact exist as to the members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

a)   whether federal law requires Defendants' customers in SFHAs to purchase and/or maintain flood insurance in amounts greater than their outstanding principal balance;

b)   whether HUD requires Defendants' customers in SFHAs to purchase and/or maintain flood insurance in amounts greater than their outstanding principal balance;

c)   whether Defendants have a pervasive policy and practice of requiring unreasonable amounts of flood insurance in excess of federal requirements and HUD requirements;

d)   whether Defendants' form letters are false, deceptive, and/or misleading;

e)   whether the mortgage documents relied upon by Defendants authorize Defendants to demand and/or force-place flood insurance in amounts greater than necessary to secure the amount of funds extended;

f)   whether Defendants breached their mortgage agreements with borrowers by demanding unauthorized amounts of flood insurance or amounts that were not properly and adequately disclosed upon origination of such borrowers' loans or home equity credit lines;

g)   whether Defendants owe their customers a duty of good faith and fair dealing, and if so, whether Defendants breached this duty by, *inter alia*, (1) demanding flood insurance in amounts greater than necessary to secure the amount of funds extended and greater than required by federal law; and (2) arranging for kickbacks or commissions for themselves and/or their affiliates in connection with force-placed insurance;

h) whether Defendants owes their customers a fiduciary duty in connection with mortgage escrow accounts, and if so, whether Defendants breached this duty by, *inter alia*, (1) paying for excessive amounts of flood insurance coverage out of escrow; and (2) arranging for kickbacks or commissions for themselves and/or their affiliates in connection with force-placed insurance purchased out of escrow;

i) Whether Defendants were unjustly enriched by their conduct;

j) whether Defendants conduct as described herein violates the NYDPA;

k) the appropriateness and proper form of any declaratory or injunctive relief;

l) the appropriateness and proper measure of monetary and other damages sustained by the Putative Classes; and

m) the appropriateness and proper measure of statutory penalties and punitive damages.

59.   This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

60.   Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in unnecessary insurance premiums and related charges that are readily calculable from

Defendants' business records and other class-wide evidence.  Members of the Putative Classes do not have an interest in pursuing separate individual actions against Defendants, as the amount of each class member's individual claims is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

61.     Plaintiff intends to send notice to all members of the Putative Classes to the extent required by Rule 23.  The names and addresses of the Putative Class members are available from Defendants' records.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT/ BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

#### (Asserted against Citigroup)

62.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

63.     Plaintiff's mortgage is a standard form FHA mortgage.

64.     Citibank was the lender-in-interest to Plaintiff's mortgage from 2002 (after the mortgage was acquired by Citibank) until Citibank transferred its interest in the mortgage to Midland in the second half of 2011.  During this time, CitiMortgage serviced the mortgage on behalf of Citibank.

65.     Citigroup was bound by the terms of Plaintiff's mortgage during the time that it held and serviced the mortgage.

66.     Plaintiff's mortgage does not require flood insurance coverage in an amount greater than the amount of his outstanding principal balance.

67.     Citigroup breached the terms of Plaintiff's mortgage by requiring Plaintiff to obtain and maintain flood insurance in excess of the amount required under his mortgage, and by force-placing flood insurance in excess of the amount required under his mortgage.

68.     This was not an isolated breach.  Citigroup similarly breached the mortgage agreements of other Citigroup Over-Insured Class members by requiring them to obtain and maintain flood insurance in excess of the amount required under their mortgage agreements, and/or by force-placing flood insurance in excess of the amount required under their mortgage agreements.

69.     Citigroup also breached the implied covenant of good faith and fair dealing inherent in Plaintiff's mortgage and the mortgages of other Citigroup Over-Insured Class members.

70.     Citigroup owed Plaintiff and the Citigroup Over-Insured Class a duty of good faith and fair dealing, by virtue of Citigroup's contractual relationship with Plaintiff and other class members.

71.     Citigroup breached this duty by, among other things: (1) demanding and/or force-placing flood insurance coverage in excess of the amount required by federal law or the relevant mortgage documents, and in excess of the amount required to protect Citigroup's legitimate financial interests; (2) unreasonably exercising in bad faith any purported discretionary authority Citigroup claims it was afforded under the loan and mortgage documents, (3) imposing contractual requirements that did not exist or that exceeded the requirements disclosed in the

relevant loan and mortgage documents; and (4) arranging for kickbacks, commissions, or other compensation for itself and/or its affiliates in connection with lender-placed insurance.

72.     Citigroup willfully engaged in the foregoing conduct in bad faith, for the purpose of (1) gaining unwarranted contractual and legal advantages; (2) unfairly and unconscionably maximizing revenue from Plaintiff and other class members; and (3) generating commissions, kickbacks, or other compensation for Citigroup and/or its affiliates.

73.     The foregoing breaches were willful and not the result of mistake or inadvertence. Citigroup systematically and pervasively required other Citigroup Over-Insured Class Members to obtain flood insurance in excess of the amount required under their mortgage documents, in excess of the amount required by federal law, and in excess of the amount that Citigroup could fairly and reasonably demand in good faith.  Citigroup also pervasively arranged for commissions for itself and/or its affiliates in connection with lender-placed insurance.

74.     As a direct result of Citigroup's breaches of contract and breaches of the implied covenant of good faith and fair dealing, Plaintiff and the Citigroup Over-Insured Class have been injured, and have suffered actual damages and monetary losses, in the form of increased insurance premiums, interest payments, and/or other charges.

75.     Plaintiff and the Citigroup Over-Insured Class are entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

### SECOND CLAIM FOR RELIEF
**UNJUST ENRICHMENT**
**(Asserted against Citigroup)**

76.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

77. Citigroup has been unjustly enriched as a result of the conduct described in this Complaint and other inequitable conduct.

78. Citigroup received a benefit from Plaintiff and other Citigroup Lender-Placed Class members in the form of payment for force-placed insurance, and Citigroup and/or its affiliates retained a portion of these payments as commissions or other compensation.

79. Retention of these payments by Citigroup would be unjust and inequitable.  The NFIA only allows lenders and servicers to "charge the borrower for the cost of premiums and fees *incurred* by the lender or servicer for the loan in purchasing the insurance." 42 U.S.C. § 4012(e)(2); *see also* 12 C.F.R. § 22.3.   Moreover, HUD prohibits kickback or commission arrangements in its Lender's Manual, and these types of kickbacks or commissions are also prohibited by the New York law.  Citigroup abused its discretion to pass through costs for force-placed insurance, by charging Plaintiff and other Citigroup Lender-Placed Class members amounts in excess of the net costs incurred by Citigroup for such insurance and by retaining at least a portion of the premium payments as kickbacks, commissions or other compensation.

80. The kickbacks, commissions or other compensation that Citigroup and/or its affiliates received in connection with force-placed insurance were not legitimately earned, and came at the ultimate expense of Plaintiff and other members of the Citigroup Lender-Placed Class who had insurance force-placed on them by Citigroup.

81. Because it would be unjust and inequitable for Citigroup and/or its affiliates to retain such payments, Plaintiff and the Citigroup Lender-Placed Class are entitled to restitution of all monies unjustly and inequitably retained.  Citigroup cannot retain these payments in good conscience.

### THIRD CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY/BREACH OF TRUST
### (Asserted against Citigroup)

82.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

83.     Plaintiff's mortgage contains an escrow provision in Paragraph 2 of the mortgage, which is typical of other mortgages originated and/or serviced by Citigroup.

84.     Paragraph 2 of Plaintiff's mortgage provides that "Borrower shall include in each monthly payment . . . premiums for insurance[,]" including flood and hazard insurance.

85.     Paragraph 2 of Plaintiff's Mortgage further provides that the sums included in his monthly payment for insurance premiums are to be held in escrow by his lender.  These funds are to be used for the purpose of paying his insurance premiums when due, and any excess funds are to be returned to Plaintiff under the terms of his mortgage.

86.     Citigroup has accepted monies from Plaintiff for insurance premiums on a monthly basis and has held them in escrow, pursuant to Paragraph 2 of his mortgage.

87.     Citigroup was obligated to hold these escrow funds in trust, and owed Plaintiff a fiduciary duty with respect to the handling of such funds.

88.     Citigroup breached its fiduciary duty to Plaintiff and other members of the Citigroup Escrow Sub-Class by (1) unilaterally using escrow funds to purchase flood insurance that Plaintiff and other class members did not want and were not required to obtain; and (2) profiting from force-placed insurance policies that were purchased from escrow funds at the expense of Plaintiff and other class members.

89.     These actions were undertaken by Citigroup in bad faith for its own benefit and were not intended to benefit Plaintiff or other borrowers.

90.     As a direct result of Citigroup's actions, Plaintiff and the Citigroup Escrow Sub-Class have suffered injury from in the form of unnecessary and excessive escrow charges, a loss of funds from their escrow accounts, increased mortgage payments due to alleged escrow "shortages," and related injuries.

91.     Plaintiff and the Citigroup Escrow Sub-Class are entitled to damages for Citigroup's beach of its fiduciary obligations and misappropriation of escrow funds.  In addition, Plaintiff and the Citigroup Escrow Sub-Class are entitled to punitive damages because Citigroup acted in bad faith in deliberate and/or reckless disregard of their rights and its obligation to hold their escrow funds in trust.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF NEW YORK DECEPTIVE PRACTICES ACT ("NYDPA")
### N.Y. Gen. Bus. Law § 349, *et seq.*

### (Asserted against Citigroup)

92.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

93.     Citigroup was required to adhere to the requirements of the NYDPA when conducting business with Plaintiff and other Citigroup New York Sub-Class Members. Citigroup provided credit and related services to Plaintiff and the members of the Citigroup New York Sub-Class for personal, family, and/or household purposes.

94.     The NYDPA provides that "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state are hereby declared unlawful."

95.     Citigroup pervasively violated the NYDPA during the relevant period, and continues to violate this statute, by virtue of the unfair, deceptive, and fraudulent practices described herein.

96.     Among other things, Citigroup violated the NYDPA by:

a) illegitimately demanding and force-placing excessive and unnecessary flood insurance on property owned by Plaintiff and other Citigroup New York Sub-Class members, in amounts greater than required by law, greater than Citigroup's financial interest, and contrary to the amounts agreed upon in their borrower agreements;

b) fraudulently and deceptively misrepresenting the amount of flood insurance that Plaintiff and the other New York Sub-Class are required to maintain under their mortgage agreements and/or federal law;

c) materially misrepresenting to Plaintiff and other Citigroup New York Sub-Class members that federal law and/or their mortgages conferred obligations on them that they did not have;

d) unfairly and deceptively arranging for secret kickbacks, commissions, or other compensation for itself and/or its affiliates in connection with force-placed insurance purchased for Plaintiff and other Citigroup New York Sub-Class members;

e) deceptively charging Plaintiff and other Citigroup New York Sub-Class Members amounts in excess of the net costs incurred for force-placed insurance; and

f) engaging in other unconscionable and deceptive conduct as set forth in the Complaint.

97.     Citigroup engaged in such violations for the purpose of (1) unfairly and unconscionably maximizing revenue from Plaintiff and other Citigroup New York Sub-Class members; (2) generating commissions, kickbacks, or other compensation for Citigroup and/or its

affiliates; (3) gaining unwarranted contractual and legal advantages; and (4) inducing and/or forcing Plaintiff and other Citigroup New York Sub-Class members to procure unnecessary and/or excessive amounts of insurance.[10]

98.     Citigroup willfully engaged in such conduct and knew that it violated the NYDPA or showed reckless disregard for whether it violated the NYDPA.

99.     As a result of Citigroup's violations of the NYDPA, Plaintiff and the Citigroup New York Sub-Class have been injured and have suffered actual damages and monetary losses in the form of increased insurance premiums, interest payments, and/or other charges.

100.    Plaintiff and the Citigroup New York Sub-Class members are entitled to actual damages, statutory damages, treble damages, injunctive relief, attorneys' fees and costs, and any other remedies available under the NYDPA or in equity, for Citigroup's violations of the NYDPA.  *See* N.Y. Gen. Bus. Law § 349(h).

## FIFTH CLAIM FOR RELIEF
### BREACH OF CONTRACT/ BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Asserted against Midland)

101.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

102.    Plaintiff's mortgage is a standard form FHA mortgage.

103.    Midland has been the lender-in-interest to Plaintiff's mortgage and has serviced the mortgage from the time it acquired Plaintiff's mortgage in 2011 until the present date.

104.    Midland is bound by the terms of Plaintiff's mortgage.

---

[10] Plaintiff and the CitiMortgage New York Sub-Class reasonably and justifiably relied on CitiMortgage to (among other things) fully, honestly, and fairly disclose the amount of insurance that was required for their property under their mortgages and federal law, and to interpret and/or apply such requirements reasonably and fairly in good faith.

105.    Plaintiff's mortgage does not require flood insurance coverage in an amount greater than the amount of his outstanding principal balance.

106.    Midland breached the terms of Plaintiff's mortgage by requiring Plaintiff to obtain and maintain flood insurance in excess of the amount required under his mortgage, and by force-placing flood insurance in excess of the amount required under his mortgage.

107.    Midland also breached the mortgage agreements of other Midland Over-Insured Class members by requiring them to obtain and maintain flood insurance in excess of the amount required under their mortgage agreements, and/or by force-placing flood insurance in excess of the amount required under their mortgage agreements.

108.    Midland also breached the implied covenant of good faith and fair dealing inherent in Plaintiff's mortgage and the mortgages of other Midland Over-Insured Class members.

109.    Midland owed Plaintiff and the Midland Over-Insured Class a duty of good faith and fair dealing, by virtue of Midland's contractual relationship with Plaintiff and other class members.

110.    Midland breached this duty by, among other things: (1) demanding and/or force-placing flood insurance coverage in excess of the amount required by federal law or the relevant mortgage documents, and in excess of the amount required to protect Midland's legitimate financial interests; (2) unreasonably exercising in bad faith any purported discretionary authority Midland claims it was afforded under the loan and mortgage documents, (3) imposing contractual requirements that did not exist or that exceeded the requirements disclosed in the relevant loan and mortgage documents; and (4) arranging for kickbacks, commissions, or other compensation for its affiliate in connection with lender-placed insurance.

111.    Midland willfully engaged in the foregoing conduct in bad faith, for the purpose of (1) gaining unwarranted contractual and legal advantages; (2) unfairly and unconscionably maximizing revenue from Plaintiff and other class members; and (3) generating commissions, kickbacks, or other compensation for Midland its affiliate.

112.    The foregoing breaches were willful and not the result of mistake or inadvertence. Midland systematically and pervasively required other Midland Over-Insured Class Members to obtain flood insurance in excess of the amount required under their mortgage documents, in excess of the amount required by federal law, and in excess of the amount that Midland could fairly and reasonably demand in good faith.  Midland also pervasively arranged for commissions for itself or its affiliate, FirstInsure, in connection with lender-placed insurance.

113.    As a direct result of Midland's breaches of contract and breaches of the implied covenant of good faith and fair dealing, Plaintiff and other Midland Over-Insured Class have been injured, and have suffered actual damages and monetary losses, in the form of increased insurance premiums, interest payments, and/or other charges.

114.    Plaintiff and the Midland Over-Insured Class are entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

## SIXTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (Asserted against Midland and FirstInsure)

115.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

116.    Midland and/or its affiliate, FirstInsure, have been unjustly enriched as a result of the conduct described in this Complaint and other inequitable conduct.

117.    Midland received a benefit from Plaintiff and other Midland Lender-Placed Class members in the form of payment for force-placed insurance, and Midland and/or FirstInsure retained a portion of these payments as commissions or other compensation.

118.    Retention of these payments by Midland or FirstInsure would be unjust and inequitable.  The NFIA only allows lenders and servicers to "charge the borrower for the cost of premiums and fees *incurred* by the lender or servicer for the loan in purchasing the insurance." 42 U.S.C. § 4012(e)(2); *see also* 12 C.F.R. § 22.3.  Moreover, HUD prohibits kickback or commission arrangements in its Lender's Manual, and these types of kickbacks or commissions are also prohibited by the New York law.  Midland abused its discretion to pass through costs for force-placed insurance, by charging Plaintiff and other Midland Lender-Placed Class members amounts in excess of the net costs incurred by Midland for such insurance, and it was improper for Midland and/or FirstInsure to retain at least a portion of the premium payments as kickbacks, commissions or other compensation.

119.    The kickbacks, commissions or other compensation that Midland and/or its FirstInsure received in connection with force-placed insurance were not legitimately earned, and came at the ultimate expense of Plaintiff and other members of the Midland Lender-Placed Class who had flood insurance force-placed on them by Midland.

120.    Because it would be unjust and inequitable for Midland and/or FirstInsure to retain such payments, Plaintiff and the Midland Lender-Placed Class are entitled to restitution of all monies unjustly and inequitably retained.  Midland and FirstInsure cannot retain these payments in good conscience.

## **SEVENTH CLAIM FOR RELIEF**

### **BREACH OF FIDUCIARY DUTY/BREACH OF TRUST**

### **(Asserted against Midland)**

121.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

122.    Plaintiff's mortgage contains an escrow provision in Paragraph 2 of the mortgage, which is typical of other mortgages originated and/or serviced by Midland.

123.    Paragraph 2 of Plaintiff's mortgage provides that "Borrower shall include in each monthly payment . . . premiums for insurance[,]" including flood and hazard insurance.

124.    Paragraph 2 of Plaintiff's Mortgage further provides that the sums included in his monthly payment for insurance premiums are to be held in escrow by his lender.  These funds are to be used for the purpose of paying his insurance premiums when due, and any excess funds are to be returned to Plaintiff under the terms of his mortgage.

125.    Midland has accepted monies from Plaintiff for insurance premiums on a monthly basis and has held them in escrow, pursuant to Paragraph 2 of his mortgage.

126.    Midland was obligated to hold these escrow funds in trust, and owed Plaintiff a fiduciary duty with respect to the handling of such funds.

127.    Midland breached its fiduciary duty to Plaintiff and other members of the Midland Escrow Sub-Class by (1) unilaterally using escrow funds to purchase flood insurance that Plaintiff and other class members did not want and were not required to obtain; and (2) profiting from force-placed insurance policies that were purchased from escrow funds at the expense of Plaintiff and other class members.

128.    These actions were undertaken by Midland in bad faith for its own benefit and were not intended to benefit Plaintiff or other borrowers.

129.     As a direct result of Midland's actions, Plaintiff and the Midland Escrow Sub-Class have suffered injury from in the form of unnecessary and excessive escrow charges, a loss of funds from their escrow accounts, increased mortgage payments due to alleged escrow "shortages," and related injuries.

130.     Plaintiff and the Midland Escrow Sub-Class are entitled to damages for Midland's beach of its fiduciary obligations and misappropriation of escrow funds.  In addition, Plaintiff and the Midland Escrow Sub-Class are entitled to punitive damages because Midland acted in bad faith in deliberate and/or reckless disregard of their rights and its obligation to hold their escrow funds in trust.

**EIGHTH CLAIM FOR RELIEF**

**VIOLATION OF NEW YORK DECEPTIVE PRACTICES ACT ("NYDPA")**
**N.Y. Gen. Bus. Law § 349, *et seq.***

**(Asserted against Midland)**

131.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

132.     Midland was required to adhere to the requirements of the NYDPA when conducting business with Plaintiff and other Midland New York Sub-Class Members.  Midland provided credit and related services to Plaintiff and the members of the Midland New York Sub-Class for personal, family, and/or household purposes.

133.     The NYDPA provides that "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state are hereby declared unlawful."

134.     Midland pervasively violated the NYDPA during the relevant period, and continues to violate this statute, by virtue of the unfair, deceptive, and fraudulent practices described herein.

135.    Among other things, Midland violated the NYDPA by:

a)  illegitimately demanding and force-placing excessive and unnecessary flood insurance on property owned by Plaintiff and other Midland New York Sub-Class members, in amounts greater than required by law, greater than Midland's financial interest, and contrary to the amounts agreed upon in their borrower agreements;

b)  fraudulently and deceptively misrepresenting the amount of flood insurance that Plaintiff and the other New York Sub-Class are required to maintain under their mortgage agreements;

c)  materially misrepresenting to Plaintiff and other Midland New York Sub-Class members that their mortgages conferred obligations on them that they did not have;

d)  deceptively charging Plaintiff and other Midland New York Sub-Class Members amounts in excess of the net costs incurred for force-placed insurance;

e)  deceptively suggesting that it was a legitimate business practice for Midland to arrange for commissions on force-placed insurance through its affiliate, FirstInsure; and

f)  engaging in other unconscionable and deceptive conduct as set forth in the Complaint.

136.    Midland engaged in such violations for the purpose of (1) unfairly and unconscionably maximizing revenue from Plaintiff and other Midland New York Sub-Class members; (2) generating commissions, kickbacks, or other compensation for Midland and/or

FirstInsure; (3) gaining unwarranted contractual and legal advantages; and (4) inducing and/or forcing Plaintiff and other Midland New York Sub-Class members to procure unnecessary and/or excessive amounts of flood insurance.[11]

137.    Midland willfully engaged in such conduct and knew that it violated the NYDPA or showed reckless disregard for whether it violated the NYDPA.

138.    As a result of Midland's violations of the NYDPA, Plaintiff and the Midland New York Sub-Class have been injured and have suffered actual damages and monetary losses in the form of increased insurance premiums, interest payments, and/or other charges.

139.    Plaintiff and the Midland New York Sub-Class members are entitled to actual damages, statutory damages, treble damages, injunctive relief, attorneys' fees and costs, and any other remedies available under the NYDPA or in equity, for Midland's violations of the NYDPA.  *See* N.Y. Gen. Bus. Law § 349(h)

## NINTH CLAIM FOR RELIEF
### VIOLATION OF THE TRUTH IN LENDING ACT
### (15 U.S.C. § 1601 *et seq.*)
### (Asserted against Midland)

140.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

141.    Residential mortgage loan agreements are subject to the disclosure requirements of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

142.    Midland is a "creditor" as defined by the TILA.

---

[11] Plaintiff and the Midland New York Sub-Class reasonably and justifiably relied on Midland to (among other things) fully, honestly, and fairly disclose the amount of insurance that was required for their property under their mortgages and federal law, and to interpret and/or apply such requirements reasonably and fairly in good faith.

143.    Under the TILA, Midland is required to accurately and fully disclose the terms of the legal obligation between the parties. *See* 12 C.F.R. § 226.17(c)(1) ("The disclosures shall reflect the terms of the legal obligation between the parties."). This duty to make truthful and accurate disclosures is an ongoing duty, and applies to *both* subsequent disclosures and initial disclosures at the time of the loan transaction. *See Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 & n.7 (9th Cir. 1996) (rejecting defendant's argument that 12 C.F.R. § 226.17(c) "only applies to disclosures before consummation of the transaction"); *Demando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) ("Because the Notice contained terms that were in violation of the credit agreement, the Notice violated Regulation Z.").

144.    Midland violated TILA by misrepresenting to Plaintiff and other Midland Over-Insured Class members that they were required to purchase flood insurance in amounts greater than required under their mortgage agreements and greater than necessary to secure their outstanding principal balance. *See Wulf v. Bank of Am., N.A.*, 798 F. Supp. 2d 586, 597-99 (E.D. Pa. June 27, 2011) ("*Wulf I*") (magistrate opinion) (denying motion to dismiss FHA borrower's claims for violation of the TILA, based on "Defendant's departure from the mortgage documentation" by force-placing insurance in excess of the amount required by Plaintiff's mortgage); *accord*, *Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226, 1230 (N.D. Ill. 1995) (finding TILA violation as "the result of Defendant's departure from the contract").

145.    In addition, Midland violated the TILA by, *inter alia*, (i) adversely changing the terms of mortgage loans after origination without consent and demanding more insurance than previously required in amounts greater than necessary to protect its interest in the property; and (ii) failing to provide proper notice, after origination, that Midland was amending the terms of loans as described in the relevant mortgage documents. *See Hofstetter v. Chase Home Fin., LLC,*

751 F. Supp. 2d, 1116, 1123-28 (N.D. Cal. 2010) (upholding claim that "the bank violated the requirements of the TILA by adversely changing, without authorization or providing proper notice to the borrower, the terms of the HELOCs in question via [] flood insurance 'form letters'"); *Wulf I*, 798 F. Supp. 2d at 599-600 ("Plaintiff's TILA claim survives the motion to dismiss. . . . Plaintiff's TILA claim is based on the change in flood insurance requirements[.]")

146.    The TILA violations set forth above occurred within one year of the commencement of this action.  To the extent that the violations described above occurred earlier, Plaintiff did not discover and did not have a reasonable opportunity to discover Midland's violations until Midland notified her on December 23, 2011 that it was necessary for him to increase his flood insurance coverage because his existing coverage allegedly was deficient. Prior to this time, Plaintiff had no reason or opportunity to complain about any TILA violations by Midland.

147.    Plaintiff's TILA claim is timely.  The statute of limitations on Plaintiff's TILA claim did not begin to run and/or was equitably tolled until such time that he had a reasonable opportunity to discover Midland's TILA violations and complain about such violations.  It would be manifestly unjust and inconsistent with the purposes of TILA to apply and enforce an earlier accrual date for Plaintiff's TILA claim.

148.    Midland systematically and pervasively engaged in similar violations of TILA to the detriment of other members of the Midland Over-Insured Class.

149.    Plaintiff and the Midland Over-Insured Class have been injured and have suffered a monetary loss as a result of Midland's violations of TILA.

150.    As a result of Midland's violations, Plaintiff and the Midland Over-Insured Class are entitled to recover actual damages and a penalty of $500,000 or 1% of Midland's net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2).

151.    Plaintiff and the Midland Over-Insured Class also are entitled to recovery of attorneys' fees and costs to be paid by Midland, as provided by 15 U.S.C. § 1640(a)(3).

**PRAYER FOR RELIEF**

152.    WHEREFORE, Plaintiff, on behalf of himself and the Putative Classes, prays for relief as follows:

a)  Determining that this action may proceed as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure;

b)  Designating Plaintiff as class representative for the Putative Classes;

c)  Designating Plaintiff's counsel as counsel for the Putative Classes;

d)  Issuing proper notice to the Putative Classes at Defendants' expense;

e)  Declaring that Defendants breached the terms of Plaintiff's mortgage and the mortgages of other Over-Insured Class members, and breached its duty of good faith and fair dealing to Plaintiff and other Over-Insured Class members;

f)  Declaring that Defendants' conduct was inequitable and that Defendants were unjustly enriched by such conduct;

g)  Declaring that Defendants breached their fiduciary duties to Plaintiff and the Escrow Sub-Class members;

h)  Declaring that Defendants' actions violated the NYDPA;

i)  Determining that Defendants acted willfully in deliberate or reckless disregard of applicable law and the rights of Plaintiff and other Putative Class members;

34

j) Awarding appropriate equitable relief, including but not limited to an injunction requiring Defendants to reverse all unlawful, unfair, or otherwise improper charges for insurance coverage, allowing customers to close loans or credit lines without first paying premiums for insurance that was not necessary or required by law, prohibiting Defendants from imposing unfair and unlawful flood insurance requirements on borrowers, prohibiting Defendants and their affiliates from earning commissions or other compensation on force-placed insurance policies, and ordering Defendants to cease and desist from engaging in further unlawful conduct in the future;

k) Awarding actual damages, punitive damages, penalties, and interest;

l) Awarding reasonable attorneys' fees and costs and expenses; and

m) Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

153.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Putative Classes demand a trial by jury.

Respectfully submitted,

Dated:  May 17, 2012                    **NICHOLS KASTER, PLLP**


*/s/ Donald H. Nichols*
Donald H. Nichols, Bar Roll No. 515017
Kai Richter, MN Bar No. 0296545*
E. Michelle Drake, MN Bar No. 0387366*
   *(*pro hac vice* applications forthcoming)
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Email: nichols@nka.com
          krichter@nka.com
          drake@nka.com

**ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASSES**