UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GORDON CASEY and DUANE SKINNER,
individually and on behalf of all others
similarly situated,

                                Plaintiffs,

        -v-                                                5:12-CV-820

CITIBANK, N.A.; CITIMORTGAGE, INC.;
MIDFIRST BANK, N.A., doing business as
Midland Mortgage; FIRSTINSURE, INC.;
and CITIGROUP, INC.

                                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

NICHOLS KASTER, PLLP                        DONALD H. NICHOLS, ESQ.
Attorneys for Plaintiffs                    E. MICHELLE DRAKE, ESQ.
4600 IDS Center                             KAI H. RICHTER, ESQ.
80 South Eighth Street
Minneapolis, MN  55402
One Embarcadero Center                      MATTHEW C. HELLAND, ESQ.
Suite 720
San Francisco, CA  94111

BERGER & MONTAGUE, P.C.                      PATRICK F. MADDEN, ESQ.
Attorneys for Plaintiffs                    SARAH R. SCHALMAN–BERGEN, ESQ.
1622 Locust Street                          SHANON J. CARSON, ESQ.
Philadelphia, PA  19103

BALLARD SPAHR, LLP                           CHRISTOPHER J. WILLIS, ESQ.
Attorneys for Defendants Citibank, N.A.;     SARAH T. REISE, ESQ.
    CitiMortgage, Inc.; and Citigroup, Inc.  STEFANIE H. JACKMAN, ESQ.
999 Peachtree Street
Suite 1000
Atlanta, GA  30309

MENTER, RUDIN & TRIVELPIECE, P.C.      MITCHELL J. KATZ, ESQ.
Attorneys for Defendants Citibank, N.A.;     TERESA M. BENNETT, ESQ.
    CitiMortgage, Inc.; and Citigroup, Inc.
308 Maltbie Street
Suite 200
Syracuse, NY  13204

GOODWIN PROCTER LLP           DAVID S. KANTROWITZ, ESQ.
Attorneys for Defendants MidFirst Bank,    JOHN C. ENGLANDER, ESQ.
    N.A. and FirstInsure, Inc.         MATTHEW G. LINDENBAUM, ESQ.
Exchange Place
53 State Street
Boston, MA  02109

COSTELLO, COONEY & FEARON, PLLC    EDWARD G. MELVIN, ESQ.
Attorneys for Defendants MidFirst Bank,    ROBERT J. SMITH, ESQ.
    N.A. and FirstInsure, Inc.
500 Plum Street
Suite 300
Syracuse, NY  13204


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On May 17, 2012, plaintiffs Gordon Casey ("Casey") and Duane Skinner ("Skinner")

(collectively "plaintiffs"), individually and on behalf of others similarly situated, filed this class

action lawsuit against defendants Citibank, N.A. ("Citibank"); CitiMortgage, Inc.

("CitiMortgage"); and Citigroup, Inc. (collectively "the Citi defendants")[1]; MidFirst Bank, N.A.

("MidFirst")[2]; and FirstInsure, Inc. ("FirstInsure").  On July 26, 2012, plaintiffs filed an

amended complaint asserting a total of twelve causes of action—two federal claims for

---

[1]  Plaintiffs voluntarily dismiss Citigroup, Inc. without prejudice.  See Pls.' Mem. of Law, ECF No. 73, 59 n.36.  The Clerk of the Court is hereby directed to remove Citigroup, Inc. from the caption.

[2]  MidFirst also does business as Midland Mortgage.  This entity will be referred to as "MidFirst."

alleged violations of the Truth In Lending Act, 15 U.S.C. §§ 1601–1667f (2006) ("TILA") and pendent state claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty and trust, conversion, and violations of the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349 ("NYDPA").

Generally, plaintiffs allege that:  (1) defendants forced them to purchase and maintain flood insurance not contemplated in their mortgage agreements and in greater amounts than required by federal law; and (2) defendants profited from commissions and/or kickbacks related to the flood insurance they forced on plaintiffs.

The Citi defendants have moved to dismiss the amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  MidFirst and FirstInsure have filed a similar motion to dismiss.  Plaintiffs oppose both motions, and defendants have replied.  Oral argument was heard on December 21, 2012, in Utica, New York.  Decision was reserved.

## II.  FACTUAL BACKGROUND

The following facts, taken from the amended complaint and documents attached thereto and incorporated by reference therein, are assumed true for purposes of the motions to dismiss.

### A.  Casey's Mortgage

On July 16, 2002, Casey, a resident of Syracuse, New York, obtained a $25,000 loan from HCI Mortgage using a standard Federal Housing Administration form deed of trust. Shortly thereafter Citibank acquired this loan, which is secured by a mortgage on Casey's home.  CitiMortgage serviced this loan from 2002 until late 2011.  Casey is required to maintain flood insurance as his property is located in a designated flood zone.  HCI Mortgage and, initially, the Citi defendants accepted $25,000 worth of flood insurance.  Casey

voluntarily increased this coverage to $30,300 for the year between July 2009 and July 2010. On June 23, 2010, however, CitiMortgage sent Casey a letter advising, for the first time, that his flood insurance was deficient and demanding that he increase his coverage by $107,780—the difference between his existing coverage and the acceptable minimum limit required by the Citi defendants.

In August 2010 CitiMortgage "force-placed" one year of additional flood insurance on Casey's property through American Security Insurance Company ("ASIC") in the amount of $107,780. This resulted in an annual premium of $970, which was taken out of Casey's escrow account. In July 2011, Casey obtained flood insurance coverage in the total amount of $188,300 to satisfy the Citi defendants' demand and avoid further force-placed coverage through ASIC.

In late 2011 Casey's loan was transferred to MidFirst, which has owned and serviced it ever since. In December 2011 and January 2012 MidFirst sent Casey two "Notices of Insufficient Flood Insurance Coverage" in which it demanded that he increase his total flood insurance coverage to $237,349—the full replacement value of his property. On February 9, 2012, MidFirst sent Casey a third letter advising that it had force-placed $49,049 of additional flood insurance on his property, bringing the total coverage up to $237,349. The annual premium for all of the increased flood insurance coverage on Casey's property is $1478.12, which is taken out of his escrow account. The current principal balance on his loan is less than $17,000.

### B. Skinner's Mortgage

On October 5, 2011, Skinner, a Maryland resident, obtained a $142,000 mortgage from Real Estate Mortgage Network, Inc. using a standard Fannie Mae/Freddie Mac deed

instrument.  As a requirement for the closing of this mortgage, a private company performed an inspection and determined that flood insurance was not required for this particular property, which was located in flood zone "C."  Real Estate Mortgage Network, Inc. allowed this mortgage to be processed and closed without Skinner obtaining any flood insurance.

This mortgage was subsequently sold to Fannie Mae and serviced by CitiMortgage. On January 9, 2012, CitiMortgage sent Skinner a letter in which it noted that his property was located in flood zone "A9," which required flood insurance.  CitiMortgage sent Skinner a "Notice of Flood Insurance" on January 21, 2012, in which it demanded that he obtain $250,000 worth of flood insurance coverage.  When Skinner failed to do so, CitiMortgage force-placed flood insurance on his property through ASIC in the amount of $250,000.  This resulted in an annual premium of $2250, charged to Skinner.  Although he has made regular monthly mortgage payments, the Citi defendants have threatened to foreclose on Skinner's property due to outstanding payments related to the force-placed flood insurance.  The current principal balance of his loan is $142,000.

Finally, plaintiffs allege that the Citi defendants receive kickbacks and/or commissions from ASIC for the flood insurance coverage they force mortgagees to obtain.  Plaintiffs similarly claim that MidFirst and FirstInsure, an affiliate of MidFirst, receive a commission on premiums from force-placed flood insurance policies like the one placed on Casey's property. Such payments were not disclosed to plaintiffs.[3]

---

[3] In the amended complaint, plaintiffs highlight several federal cases, media reports, and a pending investigation by the New York Department of Financial Services that involve the commission arrangements between mortgage lenders and insurance providers.  These examples specifically involve commissions paid by ASIC.

## III. DISCUSSION

### A. Motion to Dismiss—Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009). Dismissal is appropriate only where plaintiffs have failed to provide some basis for the allegations that support the elements of their claims. See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiffs' favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). A district court may consider documents attached to the complaint as exhibits or incorporated by reference therein. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

### B. The National Flood Insurance Act

The National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001–4130 (2006) ("NFIA"), created the National Flood Insurance Program ("NFIP"), which is administered by the Federal Emergency Management Agency ("FEMA") and supported by the federal treasury. See Palmieri v. Allstate Ins. Co., 445 F.3d 179, 183 (2d Cir. 2006). The purpose of the NFIP is, in part, to make "flood insurance . . . available on a nationwide basis through the cooperative

efforts of the Federal Government and the private insurance industry."  42 U.S.C. § 4001(d).

Under the NFIP, lenders must ensure that appropriate flood insurance coverage is

maintained if a loan is secured by improved property located within a Special Flood Hazard

Area.  Id. § 4012a(a).  Such coverage must be "in an amount at least equal to" the lesser of:

(1) the outstanding principal balance of the loan; or (2) the maximum insurance coverage

available under the NFIP, which is currently $250,000.  Id. §§ 4012a(b)(1), 4013(b)(2).

A lender is permitted to force-place appropriate flood insurance on a property if, after

providing the borrower with forty-five days' notice, the borrower fails to secure such coverage.

Id. § 4012a(e).  The lender may charge the borrower for the cost of premiums and fees

related to force-placed coverage.  Id.

Plaintiffs acknowledge that the NFIA does not prohibit lenders from requiring flood

insurance coverage above the NFIA requirements.  Instead, they allege that their mortgage

agreements do not permit defendants to demand and force-place the coverage at issue.

### C.  Breach of Contract and Conversion—Counts 1, 4, 7,  and 10

Plaintiffs assert breach of contract and conversion claims against the Citi defendants

and MidFirst.  Specifically, they allege that these defendants breached the mortgage

agreements by force-placing flood insurance on their properties that was not contemplated in

the contracts and by accepting kickbacks and/or commissions from ASIC.  They further claim

that these defendants converted their escrow funds to pay the premiums for the force-placed

insurance.

Defendants argue that these claims must be dismissed because the mortgage

agreements give them the discretion to set and change the amount of flood insurance

required.  Thus, they conclude, there was no breach of the contracts or unlawful conversion

of plaintiffs' escrow funds.  MidFirst also argues that Casey has failed to identify the specific

funds that were allegedly converted.  This is unpersuasive as Casey alleges his escrow funds

were used to pay the force-placed insurance premiums.

### 1. <u>Casey's Claims</u>

Casey's mortgage was owned by Citibank, and serviced by CitiMortgage, from 2002 to

2011.  In 2011, MidFirst took over this mortgage.  The parties dispute the meaning of the

following provision in Casey's mortgage agreement:

> Fire, Flood, and Other Hazard Insurance.  Borrower shall insure all
> improvements on the Property, whether now in existence or subsequently
> erected, against any hazards, casualties, and contingencies, including fire, for
> which Lender requires insurance.  This insurance shall be maintained in the
> amounts and for the periods that Lender requires.  Borrower shall also insure
> all improvements on the Property, whether now in existence or subsequently
> erected, against loss by floods to the extent required by the Secretary [of the
> Department of Housing and Urban Development ("HUD")].

Am. Compl., Ex. 7, ¶ 4 ("Casey Mortgage").  Defendants assert that this provision is

unambiguous and provides them, as the "Lender," with the discretion to determine the

appropriate amount of flood insurance coverage as long as the minimum requirements of

HUD are met.  Casey maintains that the third sentence separates flood insurance from other

hazard insurance and prevents the Lender from demanding flood insurance beyond the

minimum amount required by HUD.

In support of their proposed interpretation, defendants rely on <u>Kolbe v. BAC Home

Loans Servicing, L.P.</u>, No. 11-10312, 2011 WL 3665394 (D. Mass. Aug. 18, 2011), in which

the parties interpreted this exact same contract language in the same manner, respectively,

as here.  The <u>Kolbe</u> district court found the contract language to be unambiguous and

deemed the defendants' interpretation the only reasonable one, thereby dismissing plaintiff's

breach of contract claim.  Id. at *4.  However, that decision has been reversed on appeal.
Kolbe v. BAC Home Loans Servicing, L.P., 695 F.3d 111 (1st Cir. 2012).  The United States
Court of Appeals for the First Circuit deemed the contract language ambiguous, concluded
that a rational jury could construe the provision in either manner, and reinstated the breach of
contract claim.  Id. at 122.  Although not binding, the First Circuit's well-reasoned majority
opinion is persuasive.[4]

As the First Circuit correctly noted, this particular contract provision is susceptible to
either interpretation.  Making all reasonable inferences in the non-movant's favor, this
provision addresses two different categories of insurance.  The first two sentences address
insurance required by the lender.  The third sentence contemplates insurance required by the
Secretary of HUD.  Further, the use of the word "also" in the third sentence indicates flood
insurance is separately addressed.  Finally, the phrase "to the extent required" could be
reasonably interpreted, as Casey alleges, to mean the borrower need only maintain the
minimum amount of flood insurance required by HUD regulations.  The HUD regulations
mirror those of the NFIP.  See 24 C.F.R. § 203.16a(c) (requiring flood insurance "in an
amount at least equal to either the outstanding balance of the mortgage . . . or the maximum
amount of the NFIP insurance available . . . whichever is less").

Therefore, with regard to Casey's loan, it is reasonable to interpret the contract
language to mean that he need only maintain flood insurance coverage in an amount equal
to the outstanding principal balance of his loan—or approximately $17,000.  He thus states a
plausible claim that defendants breached the contract by forcing him to purchase coverage in

---

[4]  On November 1, 2012, the First Circuit agreed to rehear this case en banc, thereby vacating the
panel decision.  The en banc hearing is scheduled for February 5, 2013.  However, as the First Circuit's
opinion is not binding, the ultimate outcome of the en banc review is irrelevant to this action.

excess of that amount.  See also Wulf v. Bank of Am., N.A., 798 F. Supp. 2d 586, 593–94

(E.D. Pa. 2011) (finding the same contract language ambiguous and denying defendant's

motion to dismiss because plaintiff's interpretation was plausible).

Accordingly, defendants' motions to dismiss Casey's breach of contract and

conversion claims will be denied.

## 2. **Skinner's Claims**

Skinner's mortgage is owned by Fannie Mae and serviced by CitiMortgage.  The Citi

defendants assert that the following provision in Skinner's loan agreement provides them the

discretion to set and change the amount of flood insurance required:

> Property Insurance.  Borrower shall keep improvements now existing or
> hereinafter erected on the Property insured against loss by fire . . . and other
> hazards including, but not limited to, earthquakes and floods, for which Lender
> requires insurance.  This insurance shall be maintained in the amounts
> (including deductible levels) and for the periods that Lender requires.  What
> Lender requires pursuant to the preceding sentences can change during the
> term of the Loan.

Am. Compl., Ex. 1, ¶ 5 ("Skinner Mortgage").

Skinner argues that Fannie Mae, not CitiMortgage, is the "Lender" with discretion to

require flood insurance.[5]  The Citi defendants argue that CitiMortgage is also a Lender

pursuant to the Fannie Mae Servicing Guidelines.  In the alternative, they assert that

CitiMortgage has the authority to require flood insurance because, under the loan agreement,

the loan servicer "collects Periodic Payments due under the Note and this Security

---

[5]  The Citi defendants maintain that this argument is undermined by plaintiff's allegation, in Count 6, that CitiMortgage is a "creditor" for purposes of TILA.  At the same time, however, these defendants argue that "a mere servicer of a loan is not a 'creditor' as defined by TILA."  Citi Defs.' Mem. of Law, ECF No. 60-1, 21.  Further, the Citi defendants do not cite any authority to support their assertion that a TILA creditor is necessarily a "Lender."  The term "Lender" is instead defined in the contract.

Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law."  Skinner Mortgage ¶ 20.

There is nothing in the loan agreement that explicitly grants the loan servicer, CitiMortgage, the authority to set and change the amount of flood insurance required under the loan.  Instead, the plain language of the contract gives this authority to the "Lender."  See id. ¶ 5.  The term "Lender" is defined in the agreement as "REAL ESTATE MORTGAGE NETWORK, INC."  Id. ¶ C.  The "Loan Servicer" is treated as a separate entity in the agreement.  See id. ¶ 20.  Making all reasonable inferences in Skinner's favor for purposes of this motion to dismiss, Fannie Mae assumed the role of Lender when it purchased Skinner's mortgage from Real Estate Mortgage Network, Inc.

The Citi defendants' assertion that CitiMortgage is also a Lender pursuant to the Fannie Mae Servicing Guidelines is irrelevant.  As defendants acknowledge, Skinner is not a party to these guidelines, which outline the relationship between Fannie Mae and its loan servicers.  These guidelines therefore have no impact on Skinner's understanding of the term "Lender" when he entered into the contract.

At this early stage of the litigation, it is reasonable to infer that Fannie Mae, not CitiMortgage, is the only "Lender" with discretion to set and change the amount of flood insurance.  Therefore, Skinner states a plausible claim that the Citi defendants breached the contract by force-placing flood insurance that was not required by Fannie Mae.[6]  Accordingly,

---

[6]  The Citi defendants also argue that the amount of flood insurance CitiMortgage force-placed on Skinner was within the amount required by Fannie Mae's guidelines.  Skinner points out that he was permitted to close on the Fannie Mae loan without any flood insurance and alleges that the amount demanded by CitiMortgage was excessive.  This is not an issue to be resolved on a motion to dismiss. Moreover, as explained above, CitiMortgage—as the loan servicer—arguably did not have the authority to force-place any flood insurance on Skinner's property.

the Citi defendants' motion to dismiss Skinner's breach of contract and conversion claims will be denied.

### D.  Breach of Covenant of Good Faith and Fair Dealing—Counts 1 and 7

Plaintiffs do not assert separate causes of action for breach of the implied covenant of good faith and fair dealing.  They instead maintain that these allegations merely augment their breach of contract claims.  Defendants argue that these claims must be dismissed because plaintiffs cannot show they acted in bad faith since the flood insurance coverage they required was based on a FEMA policy recommending that homeowners maintain flood insurance in the amount equal to the full replacement value of the property.[7]

Under New York law, the promisor is obligated to perform in good faith "any promises which a reasonable person in the position of the promisee would be justified in understanding were included."  Dalton v. Educ. Testing Serv., 663 N.E.2d 289, 291, 87 N.Y.2d 384, 389 (1995) (internal quotation marks omitted).  This encompasses a duty "not to act arbitrarily or irrationally" when exercising any discretion contemplated in the contract.  Id.  Maryland law imposes similar obligations.  See Blondell v. Littlepage, 991 A.2d 80, 91, 413 Md. 96, 114 (2010).

To the extent plaintiffs' claims for breach of the implied covenant of good faith and fair dealing are subsumed in their breach of contract claims, they survive the motion to dismiss as plaintiffs state plausible breach of contract claims.  Moreover, while FEMA recommends that borrowers maintain a sufficient amount of flood insurance to cover the full replacement

---

[7]  The Citi defendants also argue that these claims must be dismissed because plaintiffs have failed to state breach of contract claims and, according to defendants, New York and Maryland law do not permit a breach of good faith and fair dealing claim as an independent cause of action.  However, this argument is moot as the breach of contract claims will survive the motions to dismiss.

value of their properties when possible, this is not required by federal law and does not supersede the contractual obligations.  See Hofstetter v. Chase Home Fin., LLC, 751 F. Supp. 2d 1116, 1127 n.3 (N.D. Cal. 2010) ("Simply because an agency recommends that lenders maintain a certain amount of flood insurance coverage does not mean that lenders have carte blanche to do so without regard to the terms of their loan agreements with borrowers.").

Finally, MidFirst asserts that it did not act in bad faith because it provided Casey with an opportunity to purchase his own flood insurance and disclosed the commission paid to FirstInsure.  However, it is premature to determine, as a matter of law, whether defendants acted in bad faith by force-placing allegedly unnecessary and excessive flood insurance on plaintiffs' properties.

In short, plaintiffs sufficiently allege that defendants exhibited bad faith by force-placing unnecessary or excessive flood insurance—either without the contractual authority to require such insurance or as an arbitrary or irrational exercise of their discretion to do so—and by taking commissions and/or kickbacks related to the force-placed insurance. Accordingly, defendants' motions to dismiss the breach of the implied covenant of good faith and fair dealing claims will be denied.

### E.  Unjust Enrichment—Counts 2 and 8

Defendants assert that the unjust enrichment claims must be dismissed because there are valid contracts between the parties.

Generally, to state a claim for unjust enrichment, plaintiffs must allege that defendants benefitted at plaintiffs' expense and "that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield, Inc., 448 F.3d 573, 586 (2d Cir.

2006) (internal quotation marks omitted).  New York and Maryland case law indicate that an unjust enrichment claim cannot be sustained if a valid contract governs the relevant subject matter of the dispute, even against a non-signatory to the contract.  Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) (New York law); Cnty. Comm'rs v. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 607–09, 358 Md. 83, 97–100 (2000) (Maryland law).

It is premature to determine whether the mortgage agreements cover the relevant subject matter.  Indeed, plaintiffs allege that defendants received kickbacks and commissions from the force-placed flood insurance, which resulted in substantially increased annual premiums paid out of their escrow funds.  This subject forms the basis of the unjust enrichment claims and is not explicitly mentioned in the contracts.  Moreover, the practice of receiving commissions and/or kickbacks in relation to force-placed insurance is specifically prohibited by HUD and Fannie Mae regulations.  See Am. Compl., Ex. 20 (HUD Lender Guide); id. Ex. 21, 4 (Fannie Mae Servicing Guide Announcement).  Thus, it is arguably inequitable to allow defendants to benefit from such a practice.  Additionally, at this early stage of the litigation, it is reasonable to permit plaintiffs to plead unjust enrichment claims in the alternative to their breach of contract claims.  See St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 183–84 (E.D.N.Y. 2010).

FirstInsure asserts that Casey's unjust enrichment claim must be dismissed because Casey never conferred a benefit on FirstInsure.  This is unpersuasive as Casey alleges FirstInsure received a commission from the flood insurance MidFirst force-placed on his property.  Thus, albeit indirectly, FirstInsure received a benefit from Casey's escrow funds or increased indebtedness.  See Mfrs. Hanover Trust Co. v. Chem. Bank, 160 A.D.2d 113, 117

(N.Y. App. Div. 1st Dep't 1990) (for purposes of an unjust enrichment claim, "[i]t does not matter whether the benefit is directly or indirectly conveyed").

Accordingly, defendants' motions to dismiss the unjust enrichment claims will be denied.

### F.  Breach of Fiduciary Duty/Trust—Count 3 and 9

Defendants assert that plaintiffs' breach of fiduciary duty claims must be dismissed because they did not owe plaintiffs such a duty.  They correctly point out that, absent specific contractual language establishing a fiduciary obligation, "the ordinary relationship between a creditor and debtor does not give rise to the level of imposing a fiduciary duty upon the creditor."  Gorham–DiMaggio v. Countrywide Home Loans, Inc., 592 F. Supp. 2d 283, 294 (N.D.N.Y. 2008) (Kahn, J.), aff'd, 421 F. App'x 97 (2d Cir. 2011).  However, plaintiffs allege more than an ordinary creditor–debtor relationship.  They specifically claim defendants owed them a fiduciary duty with respect to the management of their escrow funds.

New York case law recognizes a fiduciary duty where specific language in the contract obligates a creditor to make payments out of an escrow account on behalf of the debtor. See Davis v. Dime Sav. Bank, 158 A.D.2d 50, 52 (N.Y. App. Div. 3d Dep't 1990).  Similarly, Maryland law permits a claim for breach of fiduciary duty if the plaintiff identifies the particular fiduciary relationship at issue and how it was allegedly breached.  BEP, Inc. v. Atkinson, 174 F. Supp. 2d 400, 405 (D. Md. 2001); see also Ins. Co. v. Miller, 765 A.2d 587, 596–97, 362 Md. 361, 378–79 (2001) (recognizing a fiduciary duty of an insurance agent to manage insurers' premiums).

Both mortgage agreements contain specific provisions obligating Skinner and Casey to include in their monthly payments a sum for insurance premiums.  Skinner Mortgage ¶ 3;

Casey Mortgage ¶ 2.  The same provisions require defendants to hold these funds in escrow and use them to pay monthly insurance premiums.  Plaintiffs thus adequately allege that a fiduciary duty existed with respect to the management of their escrow funds.  They further plausibly allege that defendants breached this duty by using the escrow funds to pay premiums for force-placed flood insurance that was unauthorized and excessive.

Accordingly, defendants' motions to dismiss the breach of fiduciary duty claims will be denied.

### G.  New York Deceptive Practices Act—Counts 5 and 11

Defendants argue that Casey's NYDPA claims must be dismissed because they fulfilled their contractual obligations, complied with federal regulations related to flood insurance amounts, and did not act deceptively.  MidFirst also argues that Casey has failed to allege a cognizable injury.

To state a claim under the NYDPA, a plaintiff must allege:  "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."  Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).  The allegedly deceptive act is objectively defined as an act "likely to mislead a reasonable consumer acting reasonably under the circumstances."  Id. (internal quotation marks omitted).

At this stage of the litigation, Casey has sufficiently alleged that the defendants force-placed flood insurance that was both in excess of federal requirements and not contemplated by the mortgage agreement.  Indeed, defendants accepted approximately $30,000 worth of flood insurance on Casey's property for almost eight years before claiming he was deficient and demanding $107,780 in additional coverage.  This would likely mislead a reasonable

consumer as to the amount of flood insurance he was required to maintain under the contract. Casey further alleges that defendants profited from undisclosed commissions and/or kickbacks in violation of federal law. As previously noted, the practice of receiving commissions and/or kickbacks in relation to force-placed insurance is prohibited by HUD and Fannie Mae regulations. See Am. Compl., Exs. 20–21. Finally, Casey clearly alleges that he had to pay higher insurance premiums because defendants force-placed unnecessary and excessive flood insurance on his property.

Accordingly, defendants' motions to dismiss Casey's NYDPA claims will be denied.

## H. Truth In Lending Act—Counts 6 and 12

Plaintiffs allege that defendants violated TILA by initially misrepresenting the amount of flood insurance required under the mortgage agreements and by subsequently force-placing unauthorized and excessive insurance without proper notice or consent. Defendants argue that the TILA claims must be dismissed because flood insurance is exempt from the TILA disclosure requirement. The Citi defendants further assert that TILA only applies to creditors, not loan servicers like CitiMortgage.

TILA Regulation Z requires creditors to disclose any "finance charges." 12 C.F.R. § 226.18(d). Insurance premiums are generally not considered "finance charges" if the insurance coverage may be obtained from an insurer of the consumer's choice. Id. § 226.4(d)(2). However, numerous courts have persuasively held that when a lender force-places insurance not contemplated in the mortgage agreement, the associated premiums are not exempt from disclosure under TILA. See, e.g., Wulf, 798 F. Supp. 2d at 598–99; Hofstetter, 751 F. Supp. 2d at 1128; Travis v. Boulevard Bank N.A., 880 F. Supp. 1226, 1229–30 (N.D. Ill. 1995) ("Defendant's purchase of the allegedly unauthorized insurance and

the subsequent addition of the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction" requiring disclosure under TILA).

It is undisputed that the mortgage agreements permitted plaintiffs to choose their own insurer.  However, plaintiffs have plausibly alleged that the flood insurance defendants force-placed on their properties was not contemplated in or authorized by the mortgage agreements.  Therefore, they sufficiently allege that the force-placed flood insurance premiums constitute new credit transactions that raised their overall indebtedness and are "finance charges" that defendants were required to disclose under TILA.

Finally, although CitiMortgage was the loan servicer, not a creditor, before the flood insurance was force-placed, they arguably became a creditor by force-placing allegedly unauthorized insurance.  See Morris v. Wells Fargo Bank N.A., No. 2:11-CV-474, 2012 WL 3929805, at *12 (W.D. Pa. Sept. 7, 2012) ("The weight of authority recognizes that force-placing unauthorized insurance constitutes a new credit transaction involving new finance charges within the scope of 12 C.F.R. § 226.18 where the amount of the plaintiff's indebtedness is increased.").  Moreover, it is premature to conclusively determine which entities acted as creditors and made the decision to force-place flood insurance on plaintiffs' properties.

Accordingly, defendants' motions to dismiss the TILA claims will be denied.

## IV.  CONCLUSION

The parties dispute whether the mortgage agreements give defendants the discretion to set and change the amount of flood insurance required.  Making all reasonable inferences in plaintiffs' favor at this early stage of the litigation, their interpretation of the contract

language is plausible.  Plaintiffs thus state plausible causes of action for breach of contract, conversion, and breach of the implied covenant of good faith and fair dealing.

Similarly, plaintiffs sufficiently allege that defendants' receipt of commissions and/or kickbacks related to the force-placed flood insurance was neither disclosed in the mortgage agreements nor permitted by federal law.  They also adequately allege that defendants mismanaged their escrow funds.  Therefore, plaintiffs state plausible causes of action for unjust enrichment and breach of fiduciary duty.

Finally, the amended complaint contains clear allegations that defendants misrepresented the amount of flood insurance required under the mortgage agreements, initially accepted a lesser amount of coverage, and failed to provide proper notice and disclosure before force-placing unauthorized and excessive flood insurance on plaintiffs' properties.  Plaintiffs thus state plausible claims for violations of the NYDPA and TILA.

Therefore, it is

ORDERED that

1.  All claims against defendant Citigroup, Inc. are DISMISSED without prejudice;

2.  Defendants Citibank, N.A. and CitiMortgage, Inc.'s motion to dismiss is DENIED;

3.  Defendants MidFirst Bank, N.A. and FirstInsure, Inc.'s motion to dismiss is DENIED; and

4.  Defendants shall file an answer to the amended complaint on or before January 18, 2013.

IT IS SO ORDERED.

_____
United States District Judge

Dated:   January 2, 2013
         Utica, New York.